Dear Emanuel Demedis, Esquire
On behalf of the Board of County Commissioners of Calvert County, you have asked for our opinion whether the County Commissioners may enact an ordinance that sets standards for the humane treatment of dogs by their owners. Specifically, you have asked whether current law permits the County Commissioners to prescribe the type of shelter that an owner must provide if a dog is kept outdoors.
You state that you have concluded that the pertinent State enabling statute concerning regulation of dogs authorizes the County Commissioners to enact laws for the protection of the public, but not to set standards for the humane treatment of animals. For the reasons explained below, we agree. If the County Commissioners wish to enact an animal protective ordinance, they should seek the necessary enabling legislation from the General Assembly.
 I Background
Currently, the County animal control law addresses, among other things, licensing requirements, dangerous dogs, dogs and cats at large, animals in heat, and nuisance animals. See 1 Code of Calvert County § 7-10 et seq. You advise that the County Commissioners are considering enactment of an ordinance that would prescribe the type of shelter that a dog owner must provide if the dog is kept outdoors. You state that the proposed ordinance would require that a shelter be "structurally sound and in good repair, be large enough to provide the dog freedom of movement, be usable and safe, provide palatable water at all times, provide shade, have a flap to keep the weather out, and be waterproof."
 II Analysis
A. Source of County Commissioner Authority
Calvert County has not adopted home rule and therefore operates under a traditional county commissioner form of government. Accordingly, the County Commissioners have limited authority, derived from laws enacted by the General Assembly. Maryland Constitution, Article VII, § 2. As Attorney General Sachs stated in a prior opinion:
 It is well settled that in counties without home rule . . . the county commissioners do not have general power to enact local legislation. . . . Rather, their powers are derived solely from statutes enacted by the General Assembly . . . [C]ounty commissioners in counties without home rule have only those powers that are expressly granted by statute and those that can be implied as necessary to carry out their express powers.
67 Opinions of the Attorney General 272, 274 (1982) (citations omitted). Thus, any effort by the Commissioners to regulate dogs or their owners must have a basis in enabling legislation enacted by the General Assembly.
B. Animal Control Authority
 1. General Provisions
In Article 24, § 11-501 et seq., the General Assembly has provided certain parameters for the regulation of dogs by county governments. Some provisions apply to all counties; some apply only to specified counties. Some provisions establish specific requirements concerning the regulation of dogs; others grant enabling authority to county commissioners to devise such regulations. Among the general provisions is a grant of authority to county commissioners to regulate dog licensing and make rules to enforce other animal control provisions. § 11-504(d).[1]
Certain provisions of the subtitle are specific to Calvert County: maximum tag size and cost of a replacement tag (§ 11-503(b)); duties of dog warden (§ 11-504(a)(2)); criminal penalties for violations of animal control provisions (§ 11-509(b)); and disposition of dogs found running at large without license tag (§ 11-510(a)). Some of the provisions specific to Calvert County authorize the County Commissioners to adopt measures concerning the regulation of dogs: authority to set license fees (§ 11-501(b)); regulation of dogs and cats (§ 11-504(p)); authority to maintain dog pound (§ 11-504(q)); authority to restrict dogs running at large, to quarantine dogs, and to regulate licensing of dogs (§ 11-510). Your inquiry focuses on one of those provisions.
2. Section 11-504(p)
 Article 24, § 11-504(p) reads as follows: In addition to and not in substitution for any powers granted under this subtitle, the County Commissioners of Calvert County may by ordinance or resolution provide for the regulation of dogs and cats within Calvert County.
Viewed in isolation from the rest of the subtitle, the seemingly broad language of § 11-504(p) might appear to confer extensive authority on the County Commissioners to enact laws pertaining to dogs and cats. However, enabling legislation applicable to county commissioners is strictly construed. Walker v. Bd. of County Comm'rs of Talbot County,208 Md. 72, 86, 116 A.2d 393 (1955); 83 Opinions of the Attorney General 41, 44 (1998). Furthermore, § 11-504(p) must be read in the context of the entire subtitle in which it appears. See Cooper v. Sacco,357 Md. 622, 629, 745 A.2d 1074 (2000); see also 2B Singer, Statutes and Statutory Construction § 51.02 (6th ed. rev. 2000). The purpose of animal control statutes, such as the animal regulation subtitle of Article 24, is to protect the public against personal injury or property damage by animals rather than to establish standards protective of the animals themselves.[2] Hammond v. Robins, 60 Md. App. 430, 435-36,483 A.2d 379 (1984); see also 7 McQuillin, The Law of Municipal Corporations § 24.284 (3rd ed. rev. 1997) (primary purpose of dog ordinances and statutes is protection of the public from injury or damages).
In our view, a local ordinance adopted by the County Commissioners might well address shelter requirements in terms of securing a dog. But § 11-504(p) does not confer authority on the County Commissioners to set specifications for dog shelters solely to ensure the humane treatment of dogs. Such an ordinance would be more aptly characterized as the "regulation of dog owners" rather than the "regulation of dogs."[3] In the absence of enabling legislation enacted by the General Assembly, the County Commissioners lack authority to enact an ordinance that sets standards for outdoor dog shelters unrelated to protection of the public.[4]
 III Conclusion
In our opinion, Article 24, § 11-504(p) authorizes the County Commissioners to enact standards for the control of animals for the purpose of protecting the public. If the County Commissioners desire to enact an ordinance regulating the humane treatment of dogs kept outdoors, as a non-home rule county, they must seek the necessary enabling legislation from the General Assembly.
 J. Joseph Curran, Jr. Attorney General
 William R. Varga Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] Article 24, § 11-504(d) provides in part:
 The county commissioners of the several counties shall have power in their discretion to make from time to time all necessary rules and regulations for the sale of dog licenses, the keeping of records of such licenses, and the convenient and effective enforcement of the provisions of this subtitle.
[2] Although the available legislative history of § 11-504(p) is limited, it is consistent with this view of the statute. Section 11-504(p) was initially enacted in 1979 and codified as Article 56, § 194(p). Chapter 194, Laws of Maryland 1979. The fiscal note that accompanied the bill stated that it "authorizes the Calvert County Commissioners to establish laws to regulate and control dogs and cats." Fiscal Note to House Bill 1474 (1979). In 1992, the statute was recodified without substantive change as part of Article 24, when Article 56 was repealed as part of a code revision enactment. Chapter 4, Laws of Maryland 1992.
[3] Of course, the behavior of dogs is often regulated through ordinances directed to their owners, and the protection of the public and protection of animals are not mutually exclusive concepts. For example, an ordinance that requires owners to restrain their animals in certain respects could also take into account the welfare of the animals in prescribing those restraints.
[4] The State criminal law proscribes certain acts of cruelty to animals, including unnecessarily failing to provide shelter. See Annotated Code of Maryland, Criminal Law Article, § 10-604(a)(4)(ii). Assuming that a local government has adequate authority, we do not believe that the State criminal law preempts local regulation, as long as the local enactment does not conflict with State law. *Page 53